IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ANGELA MAUER,                    §
                                 §
              Plaintiff,         §
                                 §
V.                               §          No. 3:16-cv-2085-BN
                                 §
WAL-MART STORES, INC., ET AL.,   §
                                 §
              Defendants.        §

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendants Wal-Mart Stores, Inc., Wal-Mart Stores East, Inc., d/b/a Wal-Mart #1055, and Wal-Mart Real Est Business (collectively, "Wal-Mart") filed a Motion for No-Evidence Summary Judgment on Plaintiff's Claims. *See* Dkt. No. 30 (the "MSJ"). Plaintiff Angela Mauer filed a response, *see* Dkt. Nos. 33 & 34, and Wal-Mart filed a reply, *see* Dkt. No. 36.

The Court heard oral argument on December 1, 2017. *See* Dkt. No. 40.

For the reasons explained below, the Court GRANTS in part and DENIES in part Wal-Mart's Motion for No-Evidence Summary Judgment on Plaintiff's Claims [Dkt. No. 30].

### Background

Mauer filed this case against Defendants Wal-Mart Stores, Inc., Wal-Mart Stores East, Inc., d/b/a Wal-Mart #1055, and Wal-Mart Real Est Business (collectively, "Defendants") in Dallas County state court on June 6, 2016. *See* Dkt. Nos. 2-2 & 2-3. She asserted claims based on premises liability, general negligence, and gross

negligence. *See* Dkt. No. 2-3 at 4-7.

Defendants filed an answer on July 14, 2016, *see* Dkt. No. 2-6, and then removed the case to this Court on July 19, 2016, *see* Dkt. No. 1.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City*

*of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted).

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the

part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

## Analysis

I.   <u>Wal-Mart sufficiently briefed its MSJ as to the premises liability claim.</u>

Mauer asserts that Wal-Mart's MSJ must be denied because it does not attach evidence and is labeled a no-evidence summary judgment motion, which Mauer asserts that federal law does not permit. The Court cannot agree.

As the United States Court of Appeals for the Fifth Circuit recently explained,

> The movant bears the initial burden and must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. But the movant need not *negate* the elements of the nonmovant's case. Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response.

*Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnotes omitted; emphasis in original). The United States Supreme Court's decision in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), "makes clear that before the non-moving party is required to produce evidence in opposition to the motion, the moving party must first satisfy its obligation of demonstrating that there are no factual issues warranting trial." *Russ v. Int'l Paper Co.*, 943 F.2d 589, 592 (5th Cir. 1991). "Of course, a party seeking summary

judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."*Id.* (quoting *Celotex*, 477 U.S. at 323).

And, as the Fifth Circuit more recently explained, as amended in 2010,

> Federal Rule of Civil Procedure 56 requires that the party "asserting that a fact cannot be ... genuinely disputed" support its assertion by either "(A) citing to particular parts of materials in the record," or "(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, *or* that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B) (emphasis added). Subsection B is disjunctive, allowing the moving party to support its position either by reference to materials in the record or by "showing" that the other party does not have admissible evidence supporting the fact at issue.
> This showing does not require the party moving for summary judgment "to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); FED. R. CIV. P. 56(c) advisory committee's note to 2010 amendment ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials."). But it is also true that even when the non-movant bears the burden of proof at trial, "[s]imply filing a summary judgment motion does not immediately compel the party opposing the motion to come forward with evidence demonstrating material issues of fact as to every element of its case." *Russ v. Int'l Paper Co.*, 943 F.2d 589, 591 (5th Cir. 1991). It is not enough for the moving party merely to make a conclusory statement that the other party has no evidence to prove his case. *See Celotex*, 477 U.S. at 328, 106 S. Ct. 2548 (White, J., concurring).

*Fret v. Melton Truck Lines, Inc.*, ___ F. App'x ___, No. 17-50031, 2017 WL 3841581, at *2-*3 (5th Cir. Sept. 1, 2017).

Still, the Fifth Circuit has long held that "[t]he moving party need not produce

evidence negating the existence of a material fact, but need only point out the absence of evidence supporting the nonmoving party's case." *Latimer v. Smithkline & French Labs., a Div. of Smithkline Beckman Corp.*, 919 F.2d 301, 303 (5th Cir. 1990); *see also Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) ("Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.'" (quoting *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir.1995) (per curiam))); *Teply v. Mobil Oil Corp.*, 859 F.2d 375, 379 (5th Cir. 1988) ("[T]he party moving for summary judgment need not disprove its opponent's claims, but need show only that the party who bears the burden of proof has adduced no evidence to support an element essential to its case." (citing *Celotex*, 477 U.S. 317)).

As Rule 56(c)(1) makes clear, the non-movant can, in appropriate circumstances, meet its initial burden without producing evidence or citing to particular parts of materials in the record if it can otherwise "show" that the adverse party cannot produce – that is, does not have – admissible evidence to support the fact at issue. Here, therefore, Wal-Mart's burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support [Mauer's] case," *Celotex*, 477 U.S. at 325, as to specific essential elements of her claims, *see Austin v. Kroger Texas L.P.*, 864 F.3d 326, 335 & n.10 (5th Cir. 2017).

Wal-Mart has met that burden to make a proper initial showing here. In its MSJ, Wal-Mart explains that, "[i]n order to survive this summary judgment motion,

Texas law compels [Mauer] to proffer more than a scintilla of evidence that demonstrates there was an unreasonably dangerous condition of which Wal-Mart had actual knowledge of or that the condition was present for such an extensive period of time that store personnel should have reasonably known about it" but that Mauer "is unable to adduce evidence to meet this burden" because "[t]here is no evidence [Mauer] was injured by an unreasonably dangerous condition because there is no evidence the electric components or the way in which the components were connected posed any greater risk than one would normally encounter when unplugging electrical components from an electrical socket" and, "[f]urther, there is no evidence of incidents involving some malfunction of the electrical components before [Mauer's] incident." Dkt. No. 31 at 2. Wal-Mart further contends that,

> [e]ven if this Court found that the electrical components or the way in which they were connected constitutes an unreasonably dangerous condition, there is no evidence that Wal-Mart had actual knowledge of the alleged condition that caused [Mauer's] injuries. Lastly, there is no evidence that Wal-Mart had constructive knowledge of the alleged condition, because there is no evidence Wal-Mart created the condition or that it was present for such an extended amount of time that knowledge should be imputed to Wal-Mart. Therefore, Wal-Mart is entitled to summary judgment dismissal of [Mauer's] claims..

*Id.*

After this introduction, Wal-Mart's MSJ separately addresses its arguments as to the unreasonably dangerous condition and actual or constructive knowledge elements of Mauer's premises liability claims and explains what Texas law requires her to show and then what Mauer will and will not be able to show by her evidence. *See id.* at 3-7.

Wal-Mart's MSJ concludes that, "[i]n order to survive this motion for summary judgment, [Mauer] is tasked with presenting evidence that establishes Wal-Mart had actual or constructive knowledge of an unreasonably dangerous condition that caused her injuries" and that, "[s]ince there is no evidence that establishes [Mauer] was injured by an unreasonably dangerous condition of which, Wal-Mart had actual or constructive knowledge, [Mauer's] claims fail as a matter of law." *Id.* at 8.

This is sufficient under Rule 56(c)(1) and the governing case law, and the Court does not accept Mauer's assertion that the Court should not entertain the MSJ "any further because on its face it is defective and should be summarily denied." Dkt. No. 34 at 2.

## II. Wal-Mart insufficiently briefed its MSJ as to the general negligence and gross negligence claims.

But Wal-Mart's MSJ does not properly move for summary judgment on Mauer's pleaded general negligence and gross negligence claims, where the claims are not addressed in the opening motion and cannot be raised for the first time in reply. *See* Dkt. No. 41 (citing *Fret*, 2017 WL 3841581, at \*2-\*3; *Clemmer v. Irving Indep. Sch. Dist.*, No. 3:13-cv-4997-D, 2016 WL 1161784, at \*8 (N.D. Tex. Mar. 22, 2016); *State Farm Fire & Cas. v. Whirlpool Corp.*, No. 3:10-cv-1922-D, 2012 WL 2422922, at \*2 (N.D. Tex. June 27, 2012)). The Court DENIES the MSJ as to those claims without prejudice to Wal-Mart's filing the second dispositive motion that the Court has separately authorized. *See* Dkt. No. 41.

III. <u>Wal-Mart is entitled to summary judgment on Mauer's premises liability claim.</u>

"Under Texas law, '[g]enerally, premises owners ... have a duty to protect invitees from, or warn them of, conditions posing unreasonable risks of harm if the owners knew of the conditions or, in the exercise of reasonable care, should have known of them.'" *McCarty v. Hillstone Restaurant Grp., Inc.*, 864 F.3d 354, 358 (5th Cir. 2017) (quoting *Henkel v. Norman*, 441 S.W.3d 249, 251 (Tex. 2014)). "Notably, this is a duty requiring only *reasonable care* by the business owner: Texas courts have repeatedly stated that businesses are not insurers of an invitee's safety." *Dixon v. Wal-Mart Stores, Inc.*, 330 F.3d 311, 314 (5th Cir. 2003) (emphasis in original; footnote omitted); *accord Austin v. Kroger Texas, L.P.*, 465 S.W.3d 193, 203 (Tex. 2015) ("A landowner is not an insurer of [a] visitor's safety." (quoting *Del Lago Ptrs., Inc. v. Smith*, 307 S.W.3d 762, 769 (Tex. 2010); internal quotation marks omitted)).

"'To prevail on a premises liability claim against a property owner, an injured invitee must establish four elements: (1) the property owner had actual or constructive knowledge of the condition causing the injury; (2) the condition posed an unreasonable risk of harm; (3) the property owner failed to take reasonable care to reduce or eliminate the risk; and (4) the property owner's failure to use reasonable care to reduce or eliminate the risk was the proximate cause of injuries to the invitee.'" *McCarty*, 864 F.3d at 358 (quoting *Henkel*, 441 S.W.3d at 251-52).

To prevail on her premises liability claim, Mauer must show that: (1) a condition of the premises created an unreasonable risk of harm; (2) Wal-Mart knew or reasonably should have known of the condition; (3) Wal-Mart failed to exercise

ordinary care to protect Mauer from the danger; and (4) Wal-Mart's failure was a proximate cause of injury to Mauer. *See Del Lago Partners*, 307 S.W.3d at 776; *see also Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983).

Wal-Mart seeks summary judgment based on the first and second requirements.

A.    A condition that posed an unreasonable risk of harm.

As to the first, "a condition is not unreasonably dangerous simply because it is not foolproof." *Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 163 (Tex. 2007) (citing *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 410 (Tex. 2006)). "A condition is unreasonably dangerous if it presents an unreasonable risk of harm." *Id.*

"A condition poses an unreasonable risk of harm for premises-defect purposes when there is a 'sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen.'" *County of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002) (quoting *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 754 (Tex. 1970)). The Texas Supreme Court has explained that "foreseeability does not require that the exact sequence of events that produced an injury be foreseeable" – "[i]nstead, only the general danger must be foreseeable." *Id.* (citing *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996)).

"There is no definitive test for determining whether a specific condition presents an unreasonable risk of harm." *Rasbury v. Wal-Mart Stores, Inc.*, Civ. A. No. H-07-2664, 2008 WL 2714126, at *5 (S.D. Tex. July 10, 2008). "In general, because determinations of what conditions are reasonable are highly fact-intensive, they are well suited for a jury." *Id.*

"When determining whether a condition poses an unreasonable risk of harm, such that a harmful event resulting from a condition was probable and foreseeable, courts often have considered, among other things, (1) the height of the condition; (2) whether any injuries have occurred in the past; and (3) whether the condition meets applicable safety standards." *Hileman v. Rouse Props., Inc.*, No. 4:16-cv-455-ALM-CAN, 2017 WL 2989200, at *9 (E.D. Tex. May 30, 2017); *accord Quiros v. Wal-Mart Stores, Inc.*, No. 5:12-cv-177-C, 2014 WL 12531507, at *3 (N.D. Tex. Jan. 6, 2014) ("There is no set objective test to determine whether a particular condition creates an unreasonable risk of harm; however, evidence which can be probative as to whether the condition poses an unreasonable risk of harm includes, but is not limited to, evidence of other falls caused by the same condition and evidence of the defectiveness of the object or condition which caused the fall."). "Texas courts have also considered whether other people have been injured by the condition, whether other people have complained about the condition, whether the condition was unusual compared to other similar conditions, and whether the plaintiff had the ability to avoid the condition." *Miller v. 24 Hour Fitness USA, Inc.*, No. 4:16-cv-001, 2016 WL 9307504, at *4 (E.D. Tex. Oct. 25, 2016).

The condition that Mauer asserts created an unreasonable risk of harm appears to be the electric carts with their electrical cords plugged into electrical wall outlets or sockets or perhaps the electrical cart with "an obvious defect in the third prong of the electrical cord in that it was chipped and fragmented." Dkt. No. 34 at 5, 9-10.

Wal-Mart asserts that "there is no evidence the electric components or the way

in which the components were connected posed any greater risk than one would normally encounter when unplugging electrical components from an electrical socket" and that "there is no evidence of incidents involving some malfunction of the electrical components before [Mauer's] incident." Dkt. No. 31 at 2. According to Wal-Mart, under Texas law, "'the fact an accident happens is no evidence that there was an unreasonable risk of such an occurrence; because almost any activity involves some risk of harm.'" *Id.* at 5 (quoting *Thoreson v. Thompson*, 431 S.W.2d 341, 344 (Tex. 1968)). Wal-Mart contends that Mauer "is unable to adduce anything more than showing that she unplugged an electric scooter and was shocked in the process, which is an expected risk when handling electrical components that are plugged into an electrical wall socket"; "[t]here is no evidence that the electrical socket or any of the electrical components were malfunctioning at the time of [Mauer's] injuries or at any time before"; and "there is no evidence that the condition of the electrical components or the way in which they were connected posed a greater risk of harm than one would ordinarily encounter with such electrical components that are plugged into an electrical socket." *Id.* at 6. Wal-Mart argues that "there is not more than a scintilla of evidence that the electrical socket or the way in which the electric scooters were plugged into the wall socket constitute an unreasonably dangerous condition." *Id.*

Mauer responds by pointing to "the burns that [she] suffered due to the sparks and fire emitted from the Wal-Mart Store's electrical outlet" and explaining that "[i]nvitees who visit grocery stores and utilize electric carts are not burned on a daily basis and certainly do not expect to be burned by simply unplugging an electrical cord"

and, "[i]n fact, none of us expect to get shocked or burned when we unplug anything, as such occurrences are extraordinarily rare." Dkt. No. 34 at 9-10. According to Mauer, while Wal-Mart "attempt[s] to argue that there is no evidence that the electrical wall socket was malfunctioning at the time of [Mauer's] injury," "the fact that fire came from the electrical wall socket when [Mauer] simply removed the plug from the socket is evidence of a dangerous condition posing an unreasonable risk of harm." *Id.* at 10.

Mauer further contends that, while Wal-Mart "also contend[s] that there is no evidence that the condition of the electrical wall socket posed a greater risk of harm than one would ordinarily encounter with such electrical components that are plugged into an electrical socket,"

> [r]easonable minds would conclude that when someone simply removes a plug from an electrical wall socket they do not ordinarily (essentially never), encounter sparks, fire, burns and injuries to such a degree as to require a hospital visit and follow-up care. Moreover, the risk of harm is enough of a concern to Defendants' that the standard operating procedure for the Wal-Mart Store's electric carts requires a Wal-Mart employee to assist customers in obtaining an electric cart by unplugging the electric cart from the wall socket prior to customer usage. (*See* Exhibit 3)(emphasis added).
> ....
> [T]he degree of foreseeability for the risk of harm associated with the electric carts is so high that the narrowly-crafted standard operating procedure requires a Wal-Mart employee to assist customers with obtaining an electric cart by unplugging the electric cart from the wall. (*See* Exhibit 3).

*Id.* at 10, 11 (emphasis removed). And, in reviewing the summary judgment evidence, Mauer explains that

> [o]n the afternoon of July 19, 2015, Angela Mauer ("Ms. Mauer") visited the Wal-Mart Store located at 5302 N. Garland Avenue, Garland, Texas 75040, which is Store No. 1055 (referred to herein as the "Wal-Mart

Store"). (*See* Exhibit 1). Ms. Mauer brought her friend, Mark Mayo, to the store with her that day, who suffers from a disability called Primary Progressive Multiple Sclerosis (Exhibit 2, 16:2-21, 17:5-11). Ms. Mauer attempted to obtain an electric cart for Mr. Mayo, and when she unplugged the electrical cord from the electrical wall socket she felt a burning sensation, saw sparks and a flame of fire and was injured. (Exhibit 2, 18:4-19:5). Thereafter, Ms. Mauer was immediately transported to the hospital via ambulance. (Exhibit 2, 29:11-14).

The Wal-Mart Store has an internal written policy that requires a Wal-Mart employee to obtain electric carts for disabled parties by unplugging the cart from the wall and driving the cart to the customer. (*See* Exhibit 3). Defendants also have an internal written policy and procedure that requires an employee in the area where the electric carts are located to record the times that the electric carts are charged and when they are unplugged. (*See* Exhibit 4). Though the Defendants set their own safety standard through the policy and procedures they created, no such attendant was present to assist, or attempted to assist, Ms. Mauer at the Wal-Mart Store on the day of her injury or to record the time that she unplugged the electric cart from the wall. (*See* Exhibit 2, 22:3-7). Further, the electric cart that Ms. Mauer was operating prior to her injury had an obvious defect in the third prong of the electrical cord in that it was chipped and fragmented. (*See* Exhibit 5). By allowing a defective cord, cart and socket system to be accessible to the public, Defendants violated another Wal-Mart written policy and procedure that requires employees to examine electrical equipment by inspecting "the power cord plugs to verify that all three prongs are appropriately in place and not broken". (*See* Exhibit 6). All damaged or defective equipment must be reported to management. *Id.* There is no evidence that these problems were reported as required. Obviously, had Defendants' own policies and procedures been followed, it is likely that Ms. Mauer would have never been injured.

A Wal-Mart assistant manager who works at the Wal-Mart Store provided deposition testimony stating that a customer is permitted to ask anyone for help if assistance is needed in obtaining an electric cart; however, she expressly admitted that there are no signs informing a customer of such available assistance. (Exhibit 7, 13:6-15:5). Additionally, the clear language of Walmart's own standard operating procedure is that assistance is not elective in nature or dependent on a customer request-An employee is required to retrieve and prepare the cart for the customer. (*See* Exhibit 3). Moreover, prior to the day of Ms. Mauer's injury, repairs had been made to the electric carts at the Wal-Mart Store seventeen times. (*See* Exhibit 8). However, Defendants still negligently failed to provide warning signs instructing customers to ask for assistance when

obtaining an electric cart. (Exhibit 9, 18:4-11).

Due to Defendants' violations of their own in-house written policies and procedures and the lack of reasonable care provided to all customers entering the Wal-Mart Store, and more specifically Ms. Mauer, Ms. Mauer suffered injury for which she should be afforded adequate relief.

*Id.* at 4-6 (emphasis removed).

Mauer asserts "there is sufficient evidence proving that the electric carts at the Wal-Mart Store presented an unreasonable risk of harm, and at minimum there is a dispute of material fact that precludes summary judgment." *Id.* at 11.

Wal-Mart replies that,

[i]n her response, [Mauer] is unclear as to what exactly she contends is the dangerous condition, citing the "sparks and fire," the electrical wall socket, and the electric carts – without explaining how any given one of those is an unreasonably dangerous condition. [Mauer] first seems to argue that because "sparks and fire" came out of the electrical wall socket, the electrical socket was malfunctioning or otherwise unreasonably dangerous prior to [Mauer's] incident. However, [Mauer] cites no evidence to support any prior complaints regarding the electrical socket, nor any physical damage to the electrical socket prior to [Mauer's] injury. Second, [Mauer] argues that Defendant's standard operating procedure ("SOP") regarding assisting disabled customers is evidence that the electric carts or the carts as plugged into the electrical socket are an unreasonably dangerous condition. However, the SOP does not in any way indicate that the electric carts are dangerous, much less unreasonably dangerous. See Doc. No. 35, Exhibit 3.

Dkt. No. 36 at 5.

The parties' arguments and Mauer's summary judgment evidence boil down to the question of whether the evidence of the electrical carts as plugged into electrical wall outlets or of the electrical cart with "an obvious defect in the third prong of the electrical cord in that it was chipped and fragmented" establish a genuine dispute of material fact as to the existence of a condition that posed an unreasonable risk of harm

-16-

in that there was a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen.

Unlike many premises liability cases, this case does not involve a substance on the floor of a store that allegedly caused a customer to trip or fall or an object protruding into a store's walkway allegedly causing a customer to trip. Apart from the evidence of the condition of the cart's electrical cord's third prong, Mauer's allegations center on something that Wal-Mart intended to be in the position that it was – an electrical cart plugged into a wall outlet, ready for a customer's use – and Wal-Mart contends that there is no evidence that the electrical socket or any of the electrical components were malfunctioning at the time of Mauer's injuries or at any time before or that the condition of the electrical components or the way in which they were connected posed a greater risk of harm than one would ordinarily encounter with electrical components that are plugged into an electrical socket.

After considering all evidence, viewing all facts, and drawing all reasonable inferences in the light most favorable to Mauer and resolving all disputed factual controversies in Mauer's favor, the Court concludes that no genuine dispute exists as to any material fact on the essential element of whether a condition posed or created an unreasonable risk of harm; that no reasonable juror could find for Mauer on this element of her premises liability claim; and that Wal-Mart is entitled to judgment as a matter of law on that claim.

Courts have noted that "[a] mere allegation that a condition caused an injury

does not, without more, support a finding that the condition was actually unreasonably dangerous" and that "the mere happening of an accident is not evidence that there was an unreasonable risk of such an occurrence." *Britton v. Home Depot U.S.A., Inc.*, 181 F. Supp. 3d 365, 370 (S.D. Tex. 2016) (internal quotation marks omitted).

Here, Mauer's evidence shows only that she unplugged an electric cart and was shocked and injured in the process through sparks and fire emitting from the electrical wall outlet and that one prong on the cart's electrical cord's plug was chipped and fragmented when inspected after this occurrence. *See* Dkt. No. 35 at 11-14, 20-21. Wal-Mart's Standard Operating Procedure entitled "Get Electric Cart for Disabled Customers" directs employees to "[u]nplug the electric cart from the wall," "[v]erify ground prong is not damaged, missing, or broken," and "[p]lace the cord underneath the seat so it does not drag on the ground." *Id.* at 17. That does not reflect a sufficient probability of sparks and flames emitting from the outlet that a reasonably prudent person would have foreseen it or some generally similar event as likely to happen. In fact, the Standard Operating Procedure directs people – specifically, employees – to do exactly what Mauer did and identifies, if anything, a possible risk in having the cord drag on the ground but does not otherwise indicate or support a reasonable inference that the electric carts are dangerous if unplugged from an electrical outlet by customers as opposed employees. Nor does Wal-Mart's Standard Operating Procedure entitled "Track Electric Shopping Cart Charge" provide any evidence to support a finding of a sufficient probability of sparks and flames emitting from the outlet – or of the happening of some generally similar event – that a reasonably prudent person

would have foreseen it or some generally similar event as likely to happen. *See id.* at 18-19. Neither does the fact that, prior to the day of Mauer's injury, repairs had been made to the electric carts at the Wal-Mart store seventeen times, where there is no evidence that the electrical cart that Mauer unplugged was one of them or what any repairs involved.

Wal-Mart's Standard Operating Procedure entitled "Inspect Electrical Equipment – Electrical Safety" recognizes the need to inspect "electrical equipment," including "electrical shopping carts," "to ensure compliance with local, state, and federal electrical codes" and supports a reasonable inference that damaged or defective electrical equipment, including "power cord plugs" on which "all three prongs are [not] appropriately in place" or that "are [] broken," pose a risk of harm. *Id.* at 22-24. But, viewing all the evidence in a light favorable to Mauer's claim and drawing all reasonable inferences in her favor, the summary judgment record contains no evidence of incidents involving some malfunction of the electrical components before Mauer's incident, no evidence that the electrical socket or any of the electrical components were malfunctioning at the time of Mauer's injuries or at any time before, no evidence to support any prior complaints regarding the electrical socket, and no evidence of any physical damage to the electrical socket prior to Mauer's injury. Mauer's own summary judgment response points to how rare the occurrence she suffered is.

But the Court cannot accept the conclusion that she draws from that – that, because she was injured from sparks and flames emitting from an electrical outlet when she unplugged the electrical cart, the electrical cart plugged into an electrical

outlet must pose an unreasonable risk of harm for premises-defect purposes. Under Texas law, businesses are not insurers of an invitee's safety, and a condition is not unreasonably dangerous simply because it is not foolproof. Electrical equipment obviously involves some degree of danger or risk of injury due to the presence of electricity, but, as Wal-Mart contends, there is no evidence the electric components or the way in which the components were connected posed any greater risk than one would normally encounter when unplugging electrical components from an electrical socket.

In short, there is no evidence here to support a finding that there was a sufficient probability of this harmful event occurring from the electrical carts plugged into electrical outlets that a reasonably prudent person would have foreseen it or some similar event as likely to happen.

B.     Actual or constructive knowledge of the condition.

Because Wal-Mart is entitled to judgment as a matter of law on Mauer's premises liability claim based on the first essential    element, the Court need not reach Wal-Mart's additional arguments that there is no evidence that Wal-Mart had actual knowledge of the alleged condition that caused Mauer's injuries or that Wal-Mart had constructive knowledge of the alleged condition.

## Conclusion

For the reasons explained above, the Court GRANTS in part and DENIES in part Wal-Mart's Motion for No-Evidence Summary Judgment on Plaintiff's Claims [Dkt. No. 30] and dismisses with prejudice Plaintiff Angela Mauer's premises liability

claim.

SO ORDERED.

DATED: December 5, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE