# EXHIBIT "A"

# PLAINTIFF'S SECOND AMENDED PETITION

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANGELA MAUER, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 3:16-cv-2085 |
| WAL-MART STORES TEXAS, LLC | § | |
| WAL-MART STORES, INC., WAL- | § | |
| MART STORES EAST, INC., d/b/a | § | |
| WAL-MART #1055, and WAL-MART | § | |
| REAL EST BUSINESS | § | |
|     Defendants. | § | |

**PLAINTIFF'S SECOND AMENDED PETITION**

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, ANGELA MAUER (hereinafter referred to as "Plaintiff" or "Plaintiff Mauer") complaining of and about WAL-MART STORES, INC., WAL-MART STORES EAST, INC. d/b/a WAL-MART #1055, and WAL-MART REAL EST BUSINESS (hereinafter referred to as "Defendants"), and for cause of action would respectfully show unto the Court the following:

**I.**
**DISCOVERY LEVEL**

1.1    Plaintiff intends to conduct discovery pursuant to Level 3 as defined in the Texas Rules of Civil Procedure.

**II.**
**PARTIES**

2.1    Plaintiff ANGELA MAUER is an individual who resides in Dallas County, Texas.

2.2    Defendant WAL-MART STORES TEXAS, LLC, is a foreign limited liability company doing business in Texas and may be served with process through its Registered Agent, CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

2.3   Defendant WAL-MART STORES, INC. is an assumed name or trade name under which the store located at 5302 N. Garland Avenue, Garland, Texas 75040 does business.

2.4   Defendant WAL-MART STORES EAST, INC. d/b/a WAL-MART #1055, is an assumed name or trade name under which the store located at 5302 N. Garland Avenue, Garland, Texas 75040 does business.

2.5   Defendant WAL-MART REAL EST BUSINESS is an assumed name or trade name under which the store located at 5302 N. Garland Avenue, Garland, Texas 75040 does business.

### III.
### VENUE & JURISDICTION

3.1   Venue properly lies in Dallas County, Texas, under §15.001 of the Tex. Civ. Prac. & Rem. Code, as it is where all or a substantial part of the events giving rise to this claim occurred.

3.2   Jurisdiction is proper in this Court because the amount in controversy exceeds the minimum jurisdictional limits of the Court. Plaintiff seeks damages of less than $75,000.00.

### IV.
### FACTS

4.1   On or about July 19, 2015, Plaintiff entered the Wal-Mart Supercenter in Garland, Texas (herein after referred to as the "Premises") with her friend, Mark Mayo.

4.2   Mr. Mayo suffers from Multiple Sclerosis and needs to ride an electric cart while shopping. Accordingly, Plaintiff attempted to secure an electric cart, which is offered as a transportation alternative by Defendant to patrons such as Plaintiff in the ordinary course of Defendant's business. Plaintiff attempted to unplug an electric cart from the wall of the Premises. Plaintiff encountered no Walmart personnel who attempted or offered to assist her. When Plaintiff unplugged the cart's electrical cord, sparks erupted from the outlet, seriously injuring Plaintiff.

4.3    The area where the electric carts are kept contains no warnings, instructions, words of caution, advisements, or prohibitions.  Carts are not secured.  Carts are not locked.  Carts are not kept in an enclosure.

4.4    No attendants are on duty to assist customers, such as Plaintiff, in removing the electric carts from the outlets or the area where they are stored.

4.5    The electric carts routinely remain plugged into an electrical outlet so that they are charged for invitees.

4.6    As a result of the incident, Plaintiff sustained serious personal injuries.  In fact, following the incident on the Premises, and due to the severity of her injuries, Plaintiff was rushed to the hospital via ambulance, wherein her healthcare providers identified several injuries which required treatment.

4.7    At all times material hereto, Defendants were the owners and possessors of the Premises.  As the owners, Defendants had a common law duty to maintain the electric carts, the area immediately surrounding the carts, and all appurtenances thereto, in a condition that would not pose an unreasonable risk of harm, including the area where Plaintiff was injured.

4.8    Further, Defendants, as the owners and possessors of the Premises, owed Plaintiff a duty to exercise reasonable care for her safety.

4.9    Furthermore, Defendants have a common law duty to exercise reasonable care in interacting and accommodating its patrons.

4.10    Furthermore, Defendants undertook a duty to provide electric shopping carts in a safe manner so as to prevent harm to patrons such as Plaintiff in acquiring and operating electric carts.

4.11    Defendants formulated a narrowly-crafted standard operating procedure that *required a Wal-Mart employee* to retrieve an electric cart from its stored location by unplugging the cart and

driving the cart to customer. Defendants did not attempt or even offer to provide this service that Defendant requires its employees to perform. Defendants negligently failed to comply with the duty of care that they created and provide an employee to assist with cart retrieval. Had Defendant complied with their own policies and exercised reasonable care in performing the duty of care they undertook, Plaintiff would not have been injured.

4.12    Further, Defendants formulated a narrowly-crafted standard operating procedure that required a Wal-Mart employee to *record* when every electric cart is plugged in and unplugged so that accurate usage and maintenance records of the carts and electric cart program could be maintained. Defendants negligently failed to comply with the duty of care that they created and provide an employee to implement the in-house procedure they designed.

4.13    Moreover, Defendants negligently failed to put customers on notice of dangers potentially existing in carts, on notice of maintenance and/or repair problems with the carts (such as the seventeen cumulative repairs to the carts on site), on notice of the necessity for assistance, on notice of the availability of assistance, on notice that assistance should be requested, and/or on notice that Walmart, per the testimony of its representative in this case, presumes, contrary to its own policies and procedures, that patrons should ask for assistance even in the absence of personnel who might offer such assistance.

4.14    All of Plaintiff's injuries occurred as a direct result of the incident that was proximately caused by the dangerous conditions described herein, which Defendants knew, or, in the exercise of ordinary care, should have known existed.

# V.
# LIABILITY OF DEFENDANTS FOR PREMISES LIABILITY, NEGLIGENCE, AND GROSS NEGLIGENCE

**PREMISES LIABILITY**

5.1     Plaintiff hereby incorporates the contents of paragraphs 4.1 through 4.6 above as if fully set forth herein verbatim.

5.2     Defendants, at the time of the incident complained of herein, owned, possessed and/or maintained control of the Premises and, as such, owed to Plaintiff a non-delegable duty to maintain the Premises in a safe condition.  Moreover, Defendants, as the owners and/or possessors of the Premises, knew or should have known of the unreasonably dangerous condition, namely the danger posed by equipment plugged into an electrical outlet, and Defendants neither corrected nor warned Plaintiff of the unreasonably dangerous condition.

5.3     Defendants' creation of the dangerous condition, failure to correct the condition and/or failure to warn Plaintiff of the condition, constitutes negligence, and such negligence was a proximate cause of the occurrence in question and Plaintiff's resulting injuries.

**GENERAL NEGLIGENCE OF DEFENDANTS**

5.4     Defendants, were negligent on the occasion in question by:

(a)     breaching their duty to exercise their own standard of care that they formulated by and through their in-house standard operating procedures;

(b)     failing to provide notice to customers that electric cart retrieval should not be done independently and employee assistance should be sought to ensure their safety;

(c)     failing to maintain a sufficiently trained staff to unplug the electric carts on behalf of customers such as Plaintiff;

(d)     failing to maintain a sufficiently trained staff to examine the charge cords on the electrical carts to ensure that all electrical components were working properly;

(e)     failing to maintain a sufficiently trained staff to keep record of when the electrical carts were plugged in and unplugged;

5.5     Further, Plaintiff's injuries were proximately caused by Defendants' negligence.

## NEGLIGENT ACTIVITY

5.6     Defendants engaged in negligent activity actively maintaining an electric shopping cart program and related policies and procedures yet actively operated, both generally and at the time of the subject incident, the electric shopping cart program in a negligent manner by, among other actions, actively dis-informing patrons, failing to provide sufficient personnel so as to comply with Defendant's own company policies, and by corporate management and store management directing on-site and on-the-clock employees, both in general and at the time of the subject incident, to perform in store locations and in a manner inconsistent with best practices necessary to ensure safe operation of the electric shopping cart program and the safety of patrons unknowingly subjecting themselves to the dangers of the electric shopping carts.

5.7     More specifically, Wal-Mart's own policies and procedures clearly require a Wal-Mart employee to be present and to assist with the acquisition of an electric cart by unplugging the cart for the customer and inspecting all electrical components, which includes the charge cord, to ensure there is no damage to the components, and drive the cart to the customer. By directing available employees to perform other tasks in other locations within the store rather than to be present with the electric carts pursuant to company policy, Defendants erroneously and negligently permitted customers, such as Plaintiff, to independently retrieve an electric cart with no assistance from an agent of the Defendants.

5.8     Plaintiff's injuries were proximately caused by Defendants' actions.

## NEGLIGENT UNDERTAKING

5.9     Defendants undertook to provide electric shopping carts for disabled patrons and further undertook to provide for the safety of the patrons and safe operations of the electric carts by

formulating their own operating procedures establishing a standard of care that requires a Wal-Mart employee to obtain an electric cart for a customer, inspect all electrical components, and record when an electric cart is unplugged and plugged in. Defendants' actions require the imposition of a duty of care to act as reasonably prudent entity would act and/or to perform pursuant to Defendant's own operating procedures applicable to electric cart operations. Defendants breached their duty by failing to exercise both ordinary care and by failing to adhere to their own applicable policies and procedures.

5.10   Defendant undertook to perform services that they knew, or in the exercise of reasonable care should have known, were necessary for Plaintiff's safety and protection as well as the safety and protection of those similarly situated. Defendants failed to exercise reasonable care and provide the resources necessary to execute their own standard operating procedures and/or to exercise reasonable car in providing carts to customers. Plaintiff and those similarly situated relied upon Defendants' performance and Defendants' performance increased Plaintiff's risk of harm. Defendants' breached their duty, and the breach of that duty was a proximate cause of Plaintiffs' injuries and damages.

**GROSS NEGLIGENCE OF DEFENDANTS**

      5.11   Defendants were grossly negligent on the occasion in question because:From an objective analysis of the probability and magnitude of the potential harm to others, Defendant's acts and omissions involved an extreme degree of risk by:

          (1)   failing to provide sufficiently trained staff to assist customers with the retrieval of electric carts;

          (2)   failing to provide sufficiently trained staff to properly inspect electrical components associated with the electrical cart; and

          (3)   failing to provide notice to customers that assistance was available for electric cart retrieval; and

  (f) Defendants has actual and subjective awareness of the extreme degree of risk and proceeded with conscious indifference to the rights safety and welfare of others because:

    (1) Defendants created narrowly crafted standard operating procedures that are designed to prevent the very incident that caused Plaintiff's injuries; and

    (2) Defendants knew that the electric carts on the Premises had been repaired approximately seventeen times prior to the day that Plaintiff was injured and failed to provide notice to customers to seek employee assistance prior to retrieving a cart.

 5.12 Further, Plaintiff's injuries were proximately caused by Defendants' gross negligence, as the term is defined in Tex. Civ. Prac. & Rem. Code Ann. § 41.001 et.seq. Due to Defendants failure to implement their own standard operating procedures and provide adequate staffing to assist with electric cart retrieval, to record when electric carts were plugged in and unplugged, and to examine all electrical components associated with the electric cart to ensure there is no existing damage, Plaintiff suffered severe burns and required hospital treatment and follow-up care.

## VI.
## PROXIMATE CAUSE

 6.1 Plaintiff hereby incorporates the contents of Paragraphs 1.1 through 5.5 as if fully set forth herein verbatim.

 6.2 Each and every, all and singular of the foregoing acts and omissions, on the part of Defendants, taken separately and/or collectively, constitute a direct and proximate cause of the injuries and damages sustained by Plaintiff and which are further set forth below.

## VII.
## DAMAGES FOR PLAINTIFF

 7.1 Plaintiff hereby incorporates the contents of Paragraphs 1.1 through 6.2 as if fully set forth herein verbatim.

7.2     As a direct and proximate result of the occurrence made the basis of this lawsuit, and Defendants' acts described herein, Plaintiff suffered serious injuries and sustained the following damages, the dollar value of which exceeds the minimal jurisdictional limits of the District Court:

(a) physical pain and mental anguish suffered in the past;

(b) physical pain and mental anguish which, in reasonable probability, she will suffer in the future;

(c) the reasonable expenses for necessary medical and hospital care which she has received for treatment of her injuries;

(d) the reasonable expenses for necessary medical and hospital care which she will, in reasonable probability, require for the future treatment of her injuries;

(e) actual lost wages;

(f) loss of earning capacity;

(g) loss of earning capacity which, in reasonable probability, Plaintiff will suffer in the future;

(h) disfigurement in the past; and

(i) disfigurement in the future.

## VIII.
## MISNOMER, ALTER-EGO and ASSUMED NAME

8.1     In the event any parties are misnamed or not included herein, it is Plaintiff's contention that such was a "misnomer" and/or such parties are/were "alter egos" of parties' names herein.  Plaintiff relies upon Vernon's Texas Revised Civil Statutes Annotated, Art 6133, *et seq.*, and Rule 28 of the Texas Rules of Civil Procedure in order to properly identify the Defendants herein.

## IX.
## JURY TRIAL

9.1     Plaintiff respectfully requests a trial by jury in this cause.

# X.
# PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, ANGELA MAUER, prays that Defendants, WAL-MART STORES, TEXAS, LLC, WAL-MART STORES INC., WAL-MART STORES EAST, INC. d/b/a WAL-MART #1055, and WAL-MART REAL EST BUSINESS be duly cited to appear and answer herein; and that upon final trial of this cause, Plaintiff recover:

1. judgment against Defendants for Plaintiff's damages as set forth above, in an amount in excess of the minimum jurisdictional limits of this Court;

2. interest on said judgment at the maximum legal rate allowed by law from the date of such judgment;

3. prejudgment interest at the maximum rate allowed by law;

4. costs of court; and

5. such other and further relief to which Plaintiff may be justly entitled.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Respectfully submitted:

**MAYO MENDOLIA & VICE L.L.P.**

By: /s/ Dale H. Henley
    KEVIN W. VICE
    State Bar No. 00785150
    kvice@mmvllp.com
    DALE H. HENLEY
    State Bar No. 24048148
    dhenley@mmvllp.com
    J. SCOTT DILBECK
    State Bar No. 24091123
    sdilbeck@mmvllp.com

    5368 State Hwy. 276
    Royse City, Texas 75189
    (469) 402-0450
    (469) 402-0461 (Facsimile)

    **ATTORNEY FOR PLAINTIFF**
    **ANGELA MAUER**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to the following counsel of record, **on this 6th day of December 2017**:

Steven J. Moses                                                                    *Via E-Service*
Cowles & Thompson, P.C.
901 Main Street, Suite 3900
Dallas, Texas 75202

_____
Dale H. Henley