IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| ANGELA MAUER, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:16-cv-2085-BN |
| | § | |
| WAL-MART STORES, INC., ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Defendants Wal-Mart Stores, Inc., Wal-Mart Stores East, Inc., d/b/a Wal-Mart #1055, and Wal-Mart Real Est Business (collectively, "Wal-Mart" or "Defendants") filed a Second Motion for Summary Judgment on Plaintiff's Claims. *See* Dkt. No. 55 (the "MSJ"). Plaintiff Angela Mauer filed a response, *see* Dkt. No. 59, and Wal-Mart filed a reply, *see* Dkt. No. 62.

Wal-Mart requests "summary judgment on Plaintiff Angela Mauer's [remaining] claims for general negligence, negligent activity, and gross negligence, as asserted in her Second Amended Petition [Dkt. No. 50]." Dkt. No. 55 at 1.

For the reasons explained below, the Court GRANTS Wal-Mart's Second Motion for Summary Judgment on Plaintiff's Claims [Dkt. No. 55].

### Background

The Court previously granted summary judgment on, and dismissed with prejudice, Mauer's claim based on premises liability because "there is no evidence here to support a finding that there was a sufficient probability of this harmful event

occurring from the electrical carts plugged into electrical outlets that a reasonably prudent person would have foreseen it or some similar event as likely to happen." Dkt. No. 44 at 20. And the Court then denied Mauer leave to amend to add a claim for negligent undertaking. *See* Dkt. No. 49.

Mauer's remaining claims in her Second Amended Petition against Wal-Mart are alleged as based on general negligence, negligent activity, and gross negligence. *See* Dkt. No. 50. She alleges, in pertinent part:

> 4.1. On or about July 19, 2015, Plaintiff entered the Wal-Mart Supercenter in Garland, Texas (herein after referred to as the "Premises") with her friend, Mark Mayo.
> 4.2. Mr. Mayo suffers from Multiple Sclerosis and needs to ride an electric cart while shopping. Accordingly, Plaintiff attempted to secure an electric cart, which is offered as a transportation alternative by Defendant to patrons such as Plaintiff in the ordinary course of Defendant's business. Plaintiff attempted to unplug an electric cart from the wall of the Premises. Plaintiff encountered no Walmart personnel who attempted or offered to assist her. When Plaintiff unplugged the cart's electrical cord, sparks erupted from the outlet, seriously injuring Plaintiff.
> 4.3. The area where the electric carts are kept contains no warnings, instructions, words of caution, advisements, or prohibitions. Carts are not secured. Carts are not locked. Carts are not kept in an enclosure.
> 4.4. No attendants are on duty to assist customers, such as Plaintiff, in removing the electric carts from the outlets or the area where they are stored.
> 4.5. The electric carts routinely remain plugged into an electrical outlet so that they are charged for invitees.
> 4.6. As a result of the incident, Plaintiff sustained serious personal injuries. In fact, following the incident on the Premises, and due to the severity of her injuries, Plaintiff was rushed to the hospital via ambulance, wherein her healthcare providers identified several injuries which required treatment.
> 4.7. At all times material hereto, Defendants were the owners and possessors of the Premises. As the owners, Defendants had a common law duty to maintain the electric carts, the area immediately surrounding the

carts, and all appurtenances thereto, in a condition that would not pose an unreasonable risk of harm, including the area where Plaintiff was injured.

4.8. Further, Defendants, as the owners and possessors of the Premises, owed Plaintiff a duty to exercise reasonable care for her safety.

4.9. Furthermore, Defendants have a common law duty to exercise reasonable care in interacting and accommodating its patrons.

4.10. Moreover, Defendants negligently failed to put customers on notice of dangers potentially existing in carts, on notice of maintenance and/or repair problems with the carts (such as the seventeen cumulative repairs to the carts on site), on notice of the necessity for assistance, on notice of the availability of assistance, on notice that assistance should be requested, and/or on notice that Walmart, per the testimony of its representative in this case, presumes, contrary to its own policies and procedures, that patrons should ask for assistance even in the absence of personnel who might offer such assistance.

4.11. All of Plaintiff's injuries occurred as a direct result of the incident that was proximately caused by the dangerous conditions described herein, which Defendants knew, or, in the exercise of ordinary care, should have known existed.

....

**GENERAL NEGLIGENCE OF DEFENDANTS**

5.4. Defendants, were negligent on the occasion in question by:
(a) breaching their duty to exercise their own standard of care that they formulated by and through their in-house standard operating procedures;
(b) failing to provide notice to customers that electric cart retrieval should not be done independently and employee assistance should be sought to ensure their safety;
(c) failing to maintain a sufficiently trained staff to unplug the electric carts on behalf of customers such as Plaintiff;
(d) failing to maintain a sufficiently trained staff to examine the charge cords on the electrical carts to ensure that all electrical components were working properly;
(e) failing to maintain a sufficiently trained staff to keep record of when the electrical carts were plugged in and unplugged;

5.5. Further, Plaintiff's injuries were proximately caused by Defendants' negligence.

**NEGLIGENT ACTIVITY**

5.6. Defendants engaged in negligent activity actively maintaining an electric shopping cart program and related policies and procedures yet actively operated, both generally and at the time of the subject incident, the electric shopping cart program in a negligent manner by, among other

actions, actively dis-informing patrons, failing to provide sufficient personnel so as to comply with Defendant's own company policies, and by corporate management and store management directing on-site and on-the-clock employees, both in general and at the time of the subject incident, to perform in store locations and in a manner inconsistent with best practices necessary to ensure safe operation of the electric shopping cart program and the safety of patrons unknowingly subjecting themselves to the dangers of the electric shopping carts.

5.7. More specifically, Wal-Mart's own policies and procedures clearly require a Wal-Mart employee to be present and to assist with the acquisition of an electric cart by unplugging the cart for the customer and inspecting all electrical components, which includes the charge cord, to ensure there is no damage to the components, and drive the cart to the customer. By directing available employees to perform other tasks in other locations within the store rather than to be present with the electric carts pursuant to company policy, Defendants erroneously and negligently permitted customers, such as Plaintiff, to independently retrieve an electric cart with no assistance from an agent of the Defendants.

5.8. Plaintiff's injuries were proximately caused by Defendants' actions.

**GROSS NEGLIGENCE OF DEFENDANTS**

5.9. Defendants were grossly negligent on the occasion in question because:From an objective analysis of the probability and magnitude of the potential harm to others, Defendant's acts and omissions involved an extreme degree of risk by:

> (1) failing to provide sufficiently trained staff to assist customers with the retrieval of electric carts;
> (2) failing to provide sufficiently trained staff to properly inspect electrical components associated with the electrical cart; and
> (3) failing to provide notice to customers that assistance was available for electric cart retrieval; and

(f) Defendants has actual and subjective awareness of the extreme degree of risk and proceeded with conscious indifference to the rights safety and welfare of others because:

> (1) Defendants created narrowly crafted standard operating procedures that are designed to prevent the very incident that caused Plaintiff's injuries; and
> (2) Defendants knew that the electric carts on the Premises had been repaired approximately seventeen times prior to the day that Plaintiff was injured and failed to provide notice to customers to seek employee assistance prior to

retrieving a cart.

5.10. Further, Plaintiff's injuries were proximately caused by Defendants' gross negligence, as the term is defined in Tex. Civ. Prac. & Rem. Code Ann. § 41.001 et.seq. Due to Defendants failure to implement their own standard operating procedures and provide adequate staffing to assist with electric cart retrieval, to record when electric carts were plugged in and unplugged, and to examine all electrical components associated with the electric cart to ensure there is no existing damage, Plaintiff suffered severe burns and required hospital treatment and follow-up care.

**VI.**
**PROXIMATE CAUSE**

6.1. Plaintiff hereby incorporates the contents of Paragraphs 1.1 through 5.5 as if fully set forth herein verbatim.

6.2. Each and every, all and singular of the foregoing acts and omissions, on the part of Defendants, taken separately and/or collectively, constitute a direct and proximate cause of the injuries and damages sustained by Plaintiff and which are further set forth below.

*Id.* at 2-6.

### Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of

a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511;

*Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted).

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

## Analysis

The Texas Supreme Court has explained that, "[d]epending on the circumstances, a person injured on another's property may have either a negligence claim or a premises-liability claim against the property owner"; that, "[w]hen the injury is the result of a contemporaneous, negligent activity on the property, ordinary negligence principles apply"; that, "[w]hen the injury is the result of the property's condition rather than an activity, premises-liability principles apply"; and that, "[a]lthough premises liability is itself a branch of negligence law, it is a 'special form'

with different elements that define a property owner or occupant's duty with respect to those who enter the property." *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016) (internal quotation marks omitted).

According to the Supreme Court, "[n]egligence and premises liability claims thus are separate and distinct theories of recovery, requiring plaintiffs to prove different, albeit similar, elements to secure judgment in their favor. Because negligence and premises liability claims are based on independent theories of recovery, we have held that they are not interchangeable." *United Scaffolding, Inc. v. Levine*, No. 15-0921, 2017 WL 2839842, at *4 (Tex. June 30, 2017) (citations and internal quotation marks omitted). "Such a negligence claim is also referred to as a 'negligent activity' claim." *Briley v. Wal-Mart Stores, Inc.*, Civ. A. No. 2:15-cv-439, 2018 WL 276368, at *2 n.1 (S.D. Tex., Jan. 3, 2018). And

> [n]egligent-activity and premises liability claims involve closely related but distinct duty analyses. In a negligent-activity case, a property owner or occupier must do what a person of ordinary prudence in the same or similar circumstances would have ... done, whereas a property owner or occupier in a premises liability case must use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition which the owner or occupier [of land] knows about or in the exercise of ordinary care should know about. Underpinning the distinctions between these claims is the principle that negligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe.

*United Scaffolding*, 2017 WL 2839842, at *4 (citations and internal quotation marks omitted).

Thus, under Texas law, while "[o]wners and occupiers of land can be held liable

-9-

for both negligent activities and conditions on their premises," "[r]ecovery on a negligent activity theory requires that the person have been injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity"; "[c]onversely, where the injury is caused by a condition created by the activity, a plaintiff is limited to a premises defect theory of liability"; and, "[f]or a negligent activity theory to survive, the evidence must suggest that the plaintiff's injuries were directly related to an activity carried out by the defendant." *Weldon v. Wal-Mart Stores Tex.*, Civ. A. No. 1:15-cv-62, 2016 WL 4248931, at *5 (E.D. Tex. Aug. 11, 2016) (citing cases; internal quotation marks omitted).

In short, "when a claim does not result from contemporaneous activity, the invitee has no negligent-activity claim, and his claim sounds exclusively in premises-liability." *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 215 (Tex. 2015).

Wal-Mart argues that Mauer's "attempts to re-phrase her pleadings to allege general negligence and negligent activity do not affect the application of premises liability law," where her "alleged injury was not caused by any ongoing activity" and, "[t]herefore, [Mauer's] claims against Wal-Mart are limited to a premises liability theory of recovery" – which the Court has already dismissed with prejudice. Dkt. No. 57 at 6 (emphasis omitted). Wal-Mart asserts that, "[a]s a matter of law, [Mauer] has no claim for general negligence or negligent activity"; that, "[w]ithout a viable claim for negligence and an award of actual damages for same, [Mauer] has no claim for gross negligence"; and that, "[t]herefore, Wal-Mart is entitled to judgment as a matter of law on Plaintiff's claims for general negligence, negligent activity, and gross

negligence." *Id.* at 6-7

I.     **Wal-Mart is entitled to summary judgment on Mauer's general negligence and <u>negligent activity claims.</u>**

According to Wal-Mart, "[b]ecause Plaintiff's claims sound only in premises liability, as detailed above, [Mauer] cannot meet her burden to prove a claim for general negligence or negligent activity. Alternatively, there is no evidence that [Mauer] was injured as a contemporaneous result of Wal-Mart's activity, that Wal-Mart breached any duty it owed to [Mauer], or that any such alleged breach proximately caused [Mauer's] injury and damages." Dkt. No. 57 at 7.

Whichever way this argument for summary judgment is analyzed, Wal-Mart is entitled to summary judgment on Mauer's general negligence and negligent activity claims because Mauer has not presented evidence to show a genuine issue for trial on a general negligence or negligent activity claim.

All of Mauer's factual allegations and remaining theories of recovery and evidence relate to alleged nonfeasance on Wal-Mart's part by failing to take measures to make the property – and, more specifically, use by customers of electric carts with their electrical cords plugged into electrical wall outlets or sockets – safe. *See* Dkt. No. 50 at ¶¶4.1-5.10. In her summary judgment response, Mauer points to three internal operating procedures and argues that they were each "ignored and [her] injuries were the direct result." Dkt. No. 60 at 6. She contends that the evidence shows that, "[h]ad Defendants or their agents simply followed their own internal procedures and properly examined the electrical components on the electric cart that Ms. Mauer used and

obtained a cart for Ms. Mauer, Ms. Mauer would have never suffered injury." *Id.* Mauer asserts that "Defendants breached a duty of care that they assumed when they decided to not only offer electric carts to the patrons that visit their store, but also when they ignored policies and procedures that govern the safe implementation of electric cart use in the store." *Id.* And she argues that, "had Defendants provided an employee, as policy requires, to obtain the electric carts for patrons visiting the store on the day of Ms. Mauer's injury, she would have never been injured" and that she "would have never even come in contact with the electrical cord [had] Defendants' policies and procedures been properly followed and certainly would never have been shocked and burned." *Id.* at 7. According to Mauer, Wal-Mart "should have anticipated the potential harm that their patrons would suffer if they chose to ignore policy and fail to provide adequate staffing to implement said policy correctly"; there "is no question that had Defendants' own policies and procedures been followed, Ms. Mauer would have never been injured"; and "[t]hus, Defendants should be held liable for their negligent implementation of their own policies and procedures, which was the proximate cause to Ms. Mauer's injuries." *Id.* at 8.

But none of that amounts to any alleged contemporaneous, ongoing negligent activity giving rise to liability under Texas law, which requires Mauer to have been injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity. *Cf. Austin v. Kroger Tex. L.P.*, 746 F.3d 191, 196-97 (5th Cir. 2014); *Briley*, 2018 WL 276368, at *5; *Weldon*, 2016 WL 4248931, at *5;

*United Scaffolding*, 2017 WL 2839842, at *5.

"[T]he fact that the [allegedly] dangerous condition resulted from some negligent conduct does not mean that [the invitee] was injured by the negligent conduct rather than the dangerous condition." *Folks v. Kirby Forest Indus. Inc.*, 10 F.3d 1173, 1177 n.8 (5th Cir. 1994). "[T]he temporal relationship between the improper act and the injury dictates whether the case sounds in premises liability or negligent activity," such that "courts applying Texas law have rejected the contention that negligently permitting a condition to exist is sufficient to maintain a negligent activity claim." *Jimenez v. Wal-Mart Stores Tex., LLC*, Civ. A. No. 2:13-cv-003-AM-VRG, 2013 WL 12129929, at *7 (W.D. Tex. July 25, 2013). "[I]f the injury is a result of a condition on the premises that the defendant failed to remedy, as opposed to defendant's affirmative conduct occurring at the time of injury, the only cause of action is a premises-liability claim." *Bustos v. Wal-Mart Stores Tex., L.P.*, Civ. A. No. 5:12-cv-0911-XR, 2013 WL 1345151, at *2 (W.D. Tex. Apr. 1, 2013) ("Plaintiff does not allege that her injury was the contemporaneous result of any ongoing activity, nor does she allege any facts that would support such an inference. Instead, Plaintiff claims that Defendant was negligent in permitting the alleged condition to exist and in failing to warn. These allegations support only a claim for premises liability, not negligent activity. Therefore, to the extent that Plaintiff's general negligence claim is asserting a negligent activity theory of recovery, Defendant is entitled to summary judgment." (citations omitted)).

Mauer does not present any evidence that would support an inference that she

was injured by or as a result of Wal-Mart's contemporaneous, ongoing negligent activity. And, under Texas law, "[a]n omission or failure to act does not support a negligent activity claim," and, "[a]ccordingly, Wal-Mart's failure to comply with its operating procedures, which is akin to a failure to act, cannot be the underlying activity." *Henderson v. Wal-Mart Stores, Inc.*, No. 1:14-cv-224, 2015 WL 3901755, at *1 (E.D. Tex. June 23, 2015).

And there is not, under these circumstances, a third, independent type of "general negligence" claim available under Texas law to Mauer as an invitee, as opposed to an employee, that would permit her to recover under a standard – including based on Wal-Mart's internal operating procedures – other than that for a premises liability or negligent activity claim. *See Henderson*, 2015 WL 3901755, at *1, *4-5; *Odom v. Kroger Texas, L.P.*, No. 3:13-cv-579-D. 2014 WL 585329, at *5-6 (N.D. Tex. Feb. 14, 2014).

In her summary judgment response, Mauer has not shown that there is a genuine issue of material fact to support a claim of negligent activity or general negligence under her factual allegations and evidence presented. Accordingly, the Court must grant summary judgment in Wal-Mart's favor on these claims.

II. <u>Wal-Mart is entitled to summary judgment on Mauer's gross negligence claim.</u>

"To recover for gross negligence in Texas, a plaintiff must satisfy the elements of an ordinary negligence or premises liability claim and demonstrate clear and convincing evidence of an act or omission involving subjective awareness of an extreme degree of risk, indicating conscious indifference to the rights, safety, or welfare of

others." *Austin*, 746 F.3d at 196 n.2 (internal quotation marks omitted). Because Mauer cannot prevail on her negligence or premises liability claims, she cannot prevail on a gross negligence claim, and, therefore, Wal-Mart is entitled to summary judgment on Mauer's gross negligence claim.

**Conclusion**

For the reasons explained above, the Court GRANTS Wal-Mart's Second Motion for Summary Judgment on Plaintiff's Claims [Dkt. No. 55] and dismisses with prejudice Plaintiff Angela Mauer's remaining claims for general negligence, negligent activity, and gross negligence.

The Court will separately enter a final judgment.

SO ORDERED.

DATED: February 7, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE